UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILIPPE BUHANNIC, *in his personal capacity and derivatively on behalf of the Common Shareholders of TradingScreen and TradingScreen*,

                                  Plaintiff,

- against -

AMERICAN ARBITRATION ASSOCIATION; MORRIS, NICHOLS, ARSHT & TUNNELL, LLP; MORGAN LEWIS & BOCKIUS LLP; WEIL GOTSHAL AND MANGES LLP; BLOOMBERG; GREENBERG TRAURIG LLP; CBIZ; BRUCE ROSENTHAL; RICHARD F. ZIEGLER; GEORGE GLUCK; EUGENE I. FARBER; TECHNOLOGY CROSSOVER VENTURES; JOSEPH AHEARN; PIERRE SCHROEDER; RICK KIMBALL; JAY HOAG; PIERO GRANDI; and VICE CHANCELLOR LASTER (TRAVIS LASTER),

                                  Defendants.

**OPINION AND ORDER**

18 Civ. 2430 (ER)

Ramos, D.J.:

      Phillippe Buhannic ("Buhannic"), proceeding *pro se*, brings a civil action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 *et seq.* ("RICO") against, *inter alia*, Weil Gotshal and Manges LLP ("Weil Gotshal"), CBIZ and Greenberg Traurig LLP, as well as the American Arbitration Association (the "AAA") and several of its arbitrators (hereinafter the "AAA Defendants") and directors, shareholders, and current/former counsel of TradingScreen Inc. (the "TradingScreen Defendants"). Buhannic alleges a grand conspiracy relating to the management of TradingScreen, Inc, in which all defendants are participants. Pending before this Court are five motions to dismiss this action filed separately by Greenberg Traurig LLP, the TradingScreen Defendants, CBIZ, Weil Gotshal and the AAA Defendants. For the reasons stated below, Defendants' motions to dismiss are GRANTED.

## I. BACKGROUND[1]

On March 19, 2018, Phillippe Buhannic commenced the instant action. Doc. 1. On June 8, 2018, the AAA Defendants and the TradingScreen Defendants moved to dismiss the Complaint. On September 14, 2018, Buhannic responded to the motions to dismiss with a document labeled "Amended Complaint" and submitted a letter seeking to add one additional defendant, Vice Chancellor Laster, on September 19, 2018. Docs. 46, 47. On September 27, 2018, this Court entered an order construing Buhannic's letter of September 19 as a request for leave to file an amended complaint and granted leave to do so. Doc. 53. On October 4, 2018, Buhannic filed the Amended Complaint, adding Patrick Buhannic as a plaintiff and Jay Hoag, Rick Kimball, Morris Nichols, Greenberg Traurig LLP, Weil Gotshal, CBIZ, Bloomberg, and Vice Chancellor Laster as defendants. Am. Compl., Doc. 54. On March 3, 2019, Patrick Buhannic filed a notice of Voluntary Dismissal, leaving only Buhannic's claims at issue in this opinion. Doc. 100.

Buhannic is the former CEO of TradingScreen and a current member of its board of directors. He also allegedly owns 60% of TradingScreen's common stock. Am. Compl. at 23. TradingScreen is a privately held corporation that provides financial technology services. *Id*. at 35. Both Piero Grandi ("Grandi") and Pierre Schroeder ("Schroeder") are directors of TradingScreen. *Id*. at 15. Bruce Rosenthal is TradingScreen's general counsel. *Id*. at 19. Morgan Lewis & Bockius LLP is TradingScreen's corporate counsel. *Id*. at 16. TCV is a private equity firm that owns 4,340,398 shares of TradingScreen's preferred stock. *Id*. at 6.

---

[1] The following facts, accepted as true for purposes of the instant motion, are largely based on Buhannic's factual allegations in his Complaint ("Compl.") (Doc.1), Amended Complaint (Doc. 54) and Reply Memorandum in Opposition to Defendants' Motions to Dismiss ("Pl.'s Opp. Mem.") (Doc. 87). *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *Walker v. Schult*, 717 F.3d 119, 122 n. 1 (2d Cir. 2013) ("[A] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

Both Jay Hoag and Rick Kimball are managing partners of TCV. *Id*. at 7. The American Arbitration Association presided over the arbitration between Buhannic and the TradingScreen Defendants, in which Richard F. Ziegler, George Gluck and Eugene I. Farber served as arbitrators. *Id*. at 25–26. CBIZ is TradingScreen's independent audit firm. *Id*. at 8. Both Morris Nichols, Arsht & Tunnell LLP and Greenberg Traurig LLP were Buhannic's prior lawyers. *Id*. at 21. Travis Lester is the Vice Chancellor on the Delaware Court of Chancery that presided over a prior litigation between Buhannic and the TradingScreen Defendants. *Id*. at 15.

The Amended Complaint alleges a RICO scheme perpetrated by Defendants to "steal the entire value of TradingScreen." *Id*. at 6. In a nutshell, the alleged RICO scheme consists of six phases[2]:

- For the first phase, Buhannic alleges that Grandi extorted Buhannic for €250,000 in return for his vote at board meetings, while he was already on TCV's payroll to steal TradingScreen from Buhannic. *Id*. at 23–24. Buhannic further alleges that his Delaware counsel at the time, Morris Nichols, was "on the payroll of Grandi and indirectly of TCV" and extorted Buhannic to give his position as Chairman of the board to Grandi. *Id*. at 25.

- For the second phase, Buhannic alleges that Schroeder and Grandi "waged TCV's war" on Buhannic by colluding with TradingScreen's long term corporate counsel to frame Buhannic for hitting a TradingScreen employee. *Id*. at 14–19. Buhannic acknowledges that he expressed his displeasure at the employee but denies ever hitting him. *Id* at 17.

- For the third phase, Buhannic alleges that Bruce Rosenthal had falsely recorded in TradingScreen's board minutes that Buhannic hit the employee. *Id*. at 19–20. Buhanic further alleges that Morgan Lewis colluded with Schroeder and Grandi by not revealing the falsification of the board minutes. *Id*.

- For the fourth phase, Buhannic alleges that Bloomberg falsely reported Buhannic's alleged physical assault. *Id*.

- For the fifth phase, Buhannic alleges that the AAA, "just interested in getting their fees," participated in the RICO scheme by failing to check alleged conflicts

---
[2] Reading the amended complaint liberally and drawing all reasonable inferences in favor of Buhannic, the Court recounts Buhannic's allegations of a six-phase RICO scheme in their chronological order.

3

> of interests of the arbitrators[3] or "review the process, transcripts and the decision, the attitude of the arbitrators versus each side." *Id*. at 26.
>
> - For the sixth phase, Buhannic alleges that they bribed CBIZ to "doctor" TradingScreen's financials. *Id*. at 8.

On November 9, 2018, Greenberg Traurig LLP, the TradingScreen Defendants, CBIZ, Weil Gotshal, and the AAA Defendants filed their respective motions to dismiss the Amended Complaint. Docs. 64, 69, 72, 75,[4] 77.

## II. LEGAL STANDARD

### A. Motion to Dismiss under Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard under Rule 8, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (internal citation omitted). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citation and quotation marks omitted).

---

[3] Buhannic alleges generally that one arbitrator's daughter works as an associate at Morgan Lewis, another arbitrator was a partner at Weil Gotshal for seven years from 1994 to 2001, and the third arbitrator worked at Weil Gotshal from 1974 to 1977. *See* Am. Compl., at 5.

[4] Defendant Weil Gotshal states in its memorandum in support of its motion to dismiss that it joins in and incorporates by reference the arguments for dismissal in the TradingScreen Defendants' motion. Doc. 76.

### B. *Pro Se* Plaintiff

The same standard applies to motions to dismiss in cases brought by *pro se* plaintiffs. *Davis v. Goodwill Indus. of Greater New York & New Jersey, Inc.*, 2017 WL 1194686, at *5 (S.D.N.Y. Mar. 29, 2017) (citing *Zapolski v. Fed. Repub. of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011)). The Court remains obligated to construe a *pro se* complaint liberally, and to interpret a *pro se* plaintiff's claims as "rais[ing] the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal citation omitted). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Nevertheless, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a *pro se* complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

### III. DISCUSSION

Preliminarily, the TradingScreen Defendants point to *Prezzi v. Schelter*, 469 F.2d 691 (2d Cir. 1972) to argue that the Amended Complaint should be dismissed outright because it contains "no numbered paragraphs, no statement of parties, no basis for jurisdiction, no causes of action and no *ad damnum* clause." Doc. 70 at 13. However, unlike the incomprehensible "88-page single spaced complaint" containing unrelated claims in *Prezzi*, Buhannic's 37-page double spaced Amended Complaint that asserts a single civil RICO claim is not so prolix and unintelligible that it completely fails to give Defendants fair notice of Buhannic's claim. *Prezzi*,

469 F.2d at 692. This is especially the case where a plaintiff is proceeding *pro se* as the court is obligated to construe a *pro se* complaint liberally to raise the strongest claim possible. Because dismissal of a *pro se* complaint for failure to comply with Federal Rule of Civil Procedure 8(a) is usually limited to cases where the complaint is so incomprehensible that its true substance is well hidden, the TradingScreen Defendants' argument here is unpersuasive. *Shoman v. State of New York*, 374 Fed. App'x 180, 182 (2d Cir. 2010).

In addition, both the TradingScreen Defendants and Greenberg Traurig LLP assert that Buhannic, proceeding *pro* se, lacks standing to assert a derivative claim. The AAA Defendants assert that the action against them is barred by the doctrine of arbitral immunity and the AAA Rules, or alternatively, that the action constitutes an impermissible collateral attack against a confirmed arbitration award. All Defendants assert that Buhannic fails to plausibly plead a civil RICO claim. The Court addresses each in turn.

**A. Buhannic, Proceeding *Pro Se*, Lacks Standing to Assert a Derivative Claim**

Preliminarily, the Court notes that Buhannic purported to file his complaint not only in his personal capacity, but also on behalf of TradingScreen, Inc. and its common shareholders. The TradingScreen Defendants and Greenberg Traurig LLP assert that Buhannic's claim is derivative as Buhannic only alleges injury in the form of loss of investment value due to diminution in value of TradingScreen's stock. Doc. 70 at 9. Therefore, they move to dismiss this action because Buhannic, proceeding *pro se*, lacks standing to bring a derivative claim. *See id*. at 9–12. Buhannic's reply does not address this argument and simply states that the Amended Complaint adequately pleads a RICO claim in compliance with Rule 8(a) or 9(b). Opp. Mem. Buhannic's failure to meaningfully oppose the motion does not itself "warrants dismissal of the action." *See*

*Goldberg v. Danaher*, 599 F.3d 181 at 183 (2d Cir. 2010) (citing *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000)).  Nevertheless, the Court grants the motion to dismiss on the merits.

It has long been recognized in the Second Circuit that the parties have the right to plead and conduct their own cases in the federal courts.  *Lannaccone v. Law*, 142 F.3d 553, 556 (2d Cir. 1998); *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997).  In fact, 28 U.S.C. § 1654 expressly guarantees it.[5]  Nevertheless, it is well-settled that the right to proceed *pro se* does not encompass the right to proceed *pro se* on behalf of the interests of another.  *In re Texaco Inc. Shareholder Derivative Litig.*, 123 F.Supp. 2d 169, 172 (S.D.N.Y. 2000) (collecting cases).  Thus, a layperson proceeding *pro se* may not pursue a derivative suit.  *See Pridgen*, 113 F.3d at 393.  These restraints on *pro se* representation serve the interests of the represented parties, the opposing parties and the court.  *Id*.

A "loss of investment value" that impacts all shareholders and the corporation equally may only be claimed in a derivative lawsuit.  *Abate v. Fifth Third Bank*, No. 13 Civ. 9078 (VSB), 2018 WL 1569260, at * 6 (S.D.N.Y. Mar. 27, 2018) (citing *Baltus-Michelson v. Credit Suisse First Boston, LLC*, 116 Fed. App'x 308, 310 (2d Cir. 2004)).  Additionally, even when individual injury is alleged, it cannot stand on its own if it is "confused or embedded" in the injury to the corporation.  *Id*. at 5.

Construing the pleadings liberally and drawing all reasonable inferences in favor of Buhannic, it is clear that Buhannic's claim in this action should be deemed to be a derivative claim.  In determining whether a claim is derivative or direct, courts consider:  (1) who suffered the alleged harm; and (2) who would receive the benefit of any recovery or other remedy.  *Yudell*

---

[5] 28 U.S.C. §1654 provides:  In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

*v. Gilbert*, 99 A.D.3d 108, 114 (1st Dep't 2012) (citing *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004)); *see also Backus v. U3 Advisors, Inc.*, No. 16 Civ. 8990 (GHW), 2017 WL 3600430 (S.D.N.Y. Aug. 18, 2017) (applying *Tooley* and dismissing a claim that apparently alleges injury to Plaintiff only in terms of injury to the company). In both the Complaint and the Amended Complaint, Buhannic has repeatedly alleged that the purported RICO scheme resulted in a drop in the value of TradingScreen from roughly $30.00 per share to $0.00 per share and that "all common stock shareholders are affected negatively." Compl. at 15; Am. Compl. at 34–35. In his own words, Buhannic concludes that Defendants perpetrated the purported scheme "in order to achieve the goal of [the] outright theft of TradingScreen." Am. Compl. at 36. Furthermore, Buhannic in this action seeks monetary damages in the amount of "$300 million," the value that Buhannic alleges TradingScreen has lost as a result of Defendants' activities. *See id.* at 35–36. Accordingly, applying the above mentioned principles, the Court construes Buhannic's claim as a derivative claim and finds that Buhannic, proceeding *pro se*, cannot maintain this action. This alone is sufficient for dismissal of Buhannic's RICO claim.

**B. Buhannic's Claim Against the AAA Defendants is Barred by Arbitral Immunity**

Even assuming that Buhannic has standing, the AAA Defendants contend that this action is nevertheless barred against them by the doctrine of arbitral immunity and the AAA rules. Doc. 78. Alternatively, the AAA Defendants contend that this action constitutes an impermissible collateral attack on a confirmed arbitration award. *Id*. The Court agrees.

The doctrine of arbitral immunity provides that "arbitrators in contractually agreed upon arbitration proceedings are absolutely immune from liability in damages for all acts within scope of the arbitral process." *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990). Sponsoring arbitration organizations like the AAA are equally "entitled to immunity for

all functions that are integrally related to the arbitral process." *Id*.; *see also Global Gold Min., LLC v. Robinson*, 533 F.Supp. 2d 442, 448 (S.D.N.Y. 2008). Here, belying his own assertion, Buhannic makes much of the same allegations regarding the AAA Defendants in this action as in his petition to vacate the award before this Court in a separately filed action. *See Buhannic v. TradingScreen, Inc.*, 17 Civ. 07993 (ER), 2018 WL 3611985, at *1 (S.D.N.Y. July 27, 2018) (finding Buhannic's allegations totally unsupported and confirming the arbitral award). The only "new" acts alleged here—improper selection of arbitrators and defective reviewing procedures— were taken under the AAA's management of the arbitration and thus sufficiently related to the arbitral process to justify immunity. *See Austern*, 898 F.2d at 886 (finding alleged conduct including improper selection of the arbitration panel and management of arbitration sufficiently related to the arbitration to justify immunity). Therefore, Buhannic's action here is precisely the type of action for which arbitral immunity was created. *See Austern*, 898 F.2d at 886. Because the law is clear with regards to the doctrine of arbitral immunity, of which Buhannic was put on notice by the AAA Defendants' motion to dismiss the Complaint, the Court finds any further amendment futile and dismisses Buhannic's claim against the AAA Defendants with prejudice.

**C. Buhannic Fails to State a RICO Claim**

Defendants contend that Buhannic has not plausibly pled all of the required elements of a civil RICO claim. The Court agrees. To state a claim for a civil RICO violation, a plaintiff must plausibly allege: (1) a violation of the RICO statute, 18 U.S.C. §1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of the RICO statute. *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (citations omitted). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in

9

the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The elements of a §1962(c) violation thus are (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See id*. Thus, claims under both § 1962(c) and (d) require that the plaintiff adequately allege a pattern of racketeering activity. *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 533 (S.D.N.Y. 2009). A "pattern of racketeering activity" requires a plaintiff to plausibly allege that each defendant engaged in at least two predicate acts. *See Palatkevich v. Choupak*, 152 F.Supp. 3d 201, 214 (S.D.N.Y. 2016).

Here, Buhannic does not plausibly plead a pattern of racketeering activity because he does not even plausibly plead that each defendant engaged in one predicate act. For example, Buhannic's sole allegation regarding Greenberg Traurig LLP on this element is "some of the defendants was [sic] his lawyer Morris Nicholls and former lawyer, including personally, Morgan Lewis and Greeneberg Traurig [sic] and were his lawyers while they were engineering his downfall." Am. Compl. at 21. Similarly, Buhannic's allegation regarding Bloomberg's reporting of the alleged physical assault does not come close to pleading a RICO predicate act. *Id*. at 20. In other instances, Buhannic only plead a RICO predicate act in connection with the alleged RICO enterprise in a conclusory manner such as "the enterprise committed mail fraud to an extensive level." *Id*. at 21. Indeed, Buhannic has committed legal error on this element as he mistakenly represents that a plaintiff needs only plead that the RICO enterprise committed at least two predicate acts. Pl.'s Opp. Mem. at 5. Failure to plausibly plead this element alone requires dismissal.

Buhannic also fails to provide any information as to either a common purpose or the relationships among Vice Chancellor Laster, the AAA Defendants, the Greenberg Traurig LLP, CBIZ and Bloomberg for the alleged RICO scheme. "An enterprise requires proof of an ongoing

10

organization, formal or informal, and … that the various members function as a continuing block." *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 667 (2d Cir. 2014) (citing *Boyle v. United States*, 556 U.S. 938 (2009)). A plaintiff must plausibly plead "three structural features: (1) a purpose, (2) relationships among members of the enterprise, and (3) longevity sufficient to permit them to pursue the enterprise's purpose." *Id*. None of these actors or their actions are connected to each other, except the fact that the actors all interacted with Buhannic at some point. Because both a pattern of racketeering activity and an enterprise are essential elements of a RICO claim, Buhannic's failure to adequately plead either element requires that his RICO claim be dismissed. *See Defalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("[t]he requirements of section 1962(c) must be established as to each individual defendant").

## IV. AMENDMENT

The Second Circuit has instructed courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).

Defendants, except the AAA Defendants, cite *Dietrich v. Bauer*, 76 F.Supp. 2d 312, 351 (S.D.N.Y. 1999) for the proposition that a plaintiff that has failed to correct deficiencies that he has notice of should not be allowed to amend their complaint. However, *Dietrich* is readily distinguished from the instant action. The plaintiff in that case was not proceeding *pro se* like Buhannic, and had the benefit of a court's ruling that addressed the problems in his complaint. *Dietrich*, 76 F. Supp.2d at 324. The Second Circuit, in *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015), reaffirmed the "liberal spirit" of amendment under Federal Rule of Civil Procedure 15 and counseled strongly against the

11

dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Id.* at 190–91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (per curiam)). Here, while Buhannic has already had the opportunity to amend his original Complaint, this is the Court's first opportunity to highlight the precise defects of his pleadings, and it is not yet apparent that any further opportunity to amend would be futile. Thus, the Court dismisses Buhannic's claims against the TradingScreen Defendants, Weil Gotshal, CBIZ, Morris Nichols, Greenberg Traurig LLP, Bloomberg and Vice Chancellor Laster without prejudice. Buhannic is permitted to replead them in a second amended complaint.

## V. CONCLUSION

For the reasons set forth above, the AAA Defendants' motion to dismiss is GRANTED with prejudice. The other defendants' motions to dismiss are GRANTED without prejudice. Defendants' letter motion for conference is hereby denied as moot. Buhannic is granted leave to file a second amended complaint. If he chooses to do so, he must file it by **October 18, 2019**. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 64, 69, 72, 75, 77, 98.

It is SO ORDERED.

Dated: September 27, 2019
       New York, New York

                                                          Edgardo Ramos, U.S.D.J.